# CASES IN CHANCERY.

## SEPTEMBER TERM, 1850.

8 309
57 618

CATHERINE HIGGINS *v.* THE MAYOR AND COMMON COUNCIL OF
PRINCETON, and others.

Whether there is any power under a charter to ordain and provide the means for the
erection of a market-house, and whether, if there be such power, it has been legally
exercised; and whether a market-house can be lawfully erected on a part of the
main street running through a city, are questions of law, which this Court will not
entertain, unless there be something further, in the case presented, which is within
the jurisdiction of the Court, and which calls for its equitable interposition.

*Quere:* whether a market-house in such a street is a nuisance.

If it be, it is a public nuisance ; and this is not the Court for the correction of public
abuses.

That a dwelling-house in the neighborhood of the proposed site for a market-house
would be less eligible as a dwelling-house, is not that kind of private injury to grow
out of a public nuisance which would authorize the interposition of a Court of
Equity.

On the 27th November, 1822, the Legislature passed "An act
for the incorporation of the town of Princeton;" by which it is
provided : That the Mayor, Recorder, Aldermen and Assistants,
or a majority of them of which the Mayor or Recorder shall be
one, may, from time to time, hold a common council within said
Borough, at such place as the Mayor, or in his absence the Re-
corder shall appoint, and make such by-laws, ordinances and
regulations, in writing, not repugnant to the laws and Constitu-
tion of this State or of the United States, and the same to en-

force, revoke, alter and amend, as to them shall appear necessary for the well ordering and governing of the said Borough and the inhabitants thereof; to appoint a Borough Treasurer, Clerk, Marshal, and such other subordinate officers as they may think necessary for the good government of the said Borough ; and to annex such fees to the several offices of the Corporation as &c. ; and to impose and tax reasonable fines and amercements against and upon all persons who shall offend against the laws, ordinances and regulations of the Corporation, made as aforesaid : Provided that no fine or amercement shall exceed $20.

That the inhabitants of the Borough, at their annual town meetings, may vote such sum or sums of money as they may think necessary to be raised for the ensuing year, for the exigencies of the said Borough ; which sum shall be assessed upon the inhabitants by the Assessor, agreeably to the laws and regulations to be made by the Common Council for the purpose, and collected by the Collector at such time, and be paid and disposed of in such manner as the Common Council shall direct; and if no sum, or an insufficient sum shall be voted to be raised, and the interest of the Borough require it, the Common Council are authorized to call a meeting of the inhabitants, by advertisement, giving at least five days notice, and propose to them the sum in their opinion necessary to be raised ; and whatever sum the inhabitants shall, by plurality of voices, vote to be raised, shall be assessed and collected, paid and disposed of in manner aforesaid : Provided that any person may appeal from his assessment to the Common Council.

That all such improvements on or in front of vacant lots as shall or may be authorized or required to be made by any law, ordinance, regulation or other act of the said Corporation, shall be made by an equitable assessment upon the inhabitants of said Corporation.

On the 30th July, 1850, Catherine Higgins exhibited her bill in this Court, stating the act of incorporation ; and that an annual meeting of the inhabitants of the Borough was held on the first Monday of April, 1850, for the purpose of holding the an-

nual election for officers ; and that, after the election of officers was over, and without any public notice having been previously given to the inhabitants, and in the absence of some persons who, having voted at the election, had left the polls, and in the absence of a very large majority of the lawful voters of said Borough, resolutions were offered and passed, in effect, that a market house should be erected in the Borough ; and also that $1,000 be raised by tax to build said market house ; and that the Mayor should call the citizens together within one week, to select a proper site for the building ; and that the said market should not be located in the main street between the City Hotel and Washington street.

That the vote upon the question whether there should be a market house was carried in the affirmative by only one vote— 23 voting for, and 22 against it.

That the complainant hath been informed, that there were some unlawful vote or votes received in taking that question, and she believes it to be true ; and, further, that she has been informed and believes, that the vote was instigated by the butchers of the town, rather than by those whom the butchers supply.

That no meeting of the inhabitants was called by the Mayor in pursuance of said resolution for the purpose of selecting a site for said market house ; but, on the contrary, that only one meeting for such purpose was held, and that was held on the 8th April, 1850, at the call of A. L. Martin, Clerk *pro tem.* of said Common Council; which said call did not show that it was made in pursuance of said above mentioned resolution ; and that it was not signed in the name of the Mayor, nor by the order of the Mayor, as neither the name of the Mayor nor the order of the Mayor appeared in said call, although said call was in writing.

That at the said meeting of a portion of the inhabitants, held in pursuance of said call of said A. L. Martin, there was some misunderstanding among some of the said inhabitants then present as to the specific object of the meeting and as to the powers of the said meeting ; and that a motion was made to adjourn the said meeting to some future day, in order more fully to arrive at the wish of the majority of the inhabitants respecting the said

market house; that such motion was declared to be out of order; and that a vote was then taken by a large portion of the persons then present, a majority of whom voted to locate the said market house somewhere between the City Hotel and Washington street, being the site previously voted against as aforesaid.

That the said Common Council, a majority of whom, if not the whole number, as the complainant has been informed and believes, were and still are of opinion that the said market house ought not to be erected on the site so selected at the said meeting held on the said 8th of April, 1850, nor at any other site in the said street, being the main street through the said Borough; yet that said Common Council seem to be under the impression that the vote so taken at the meeting last mentioned should be considered as the wish of the majority of the inhabitants, and that they, the Common Council, were bound in duty to locate said market house accordingly, notwithstanding the judgment and opinion of a majority of said Council would have led them to decide that such location was impolitic, tending to disfigure and obstruct the said street, and hurtful to the interests of the market itself.

That said Council, whose duty in the premises, as the complainant charges, was, to locate said market house, if they deemed it beneficial to said inhabitants to have a market house in said Borough, at such place as would in their judgment and under the responsibility of their sworn trust as guardians of the private rights of the citizens as well as the public interest of the Borough, best promote the welfare of the inhabitants and the prosperity of the town. And the complainant submits, that, even if a majority of the inhabitants had expressed a wish to locate the said market house at a place which the said Council should have deemed improper and unsuitable, it would have been the duty of the said Council to have disregarded the votes of the majority of voters, and acted with respect to their own views of the rights of the minority and of those citizens who are interested in the question, but who go not to the polls to vote, and of the general interest of the Borough.

That the complainant is informed and believes it to be true,

that the Common Council have not ordained in due and solemn form that the interest of the inhabitants of said Borough requires a market house; nor have they passed any ordinance or law, as the complainant has been informed and believes, authorizing the erection of any market house in the main street of said Borough, nor in any other part of said Borough.

That the complainant has been informed and believes, that the said Common Council have made a contract with one Noah Green to erect the said market house, on a site selected under the vote taken on the 8th of April, 1850, as aforesaid; the same being in the said Main street, between the City Hotel and Washington street, and nearly opposite the residence of the complainant; and that Noah Green has been preparing to erect said market house, on said site, and is now progressing in the erection thereof, having brought, or caused to be brought on the ground, for that purpose, materials for the same, such as earth, iron columns or posts, and timbers; and is engaged, with several men, in erecting the said market house, with the utmost speed, as if to discourage the complainant and other inhabitants aggrieved thereby from taking legal measures to arrest it.

That the value of the property whereon the complainant now resides, in which not only she, but her children, several of whom are minors, are interested, they being the owners thereof, will be greatly depreciated if the said market house should be erected where it is now about to be erected; the same being only about 100 feet from the said residence of the complainant.

That the market house is not only an obstruction to the highway, but will render the residence of the complainant a less valuable one than it now is, by several hundred dollars. That the circumstances connected with a market in any place, but especially in a small town like Princeton, where ordinances and stringent regulations for the government and management of a market cannot well be enforced, are calculated to collect noisy boys and negroes at night; to draw insects, and to emit noxious smells, and to exhibit many unsightly objects, and exert an impure influence which the complainant cannot well set forth, but which

are apparent; all of which tend to make a market house standing in a public road, unpaved, as is the said street, a nuisance to any respectable dwelling house at the distance of that of the complainant; and that the complainant feels that she and her family, being principally females, some of whom are minors, of whom she is the guardian, will be greatly and irreparably damaged in their pecuniary affairs and real estate, besides being subjected to great personal annoyance and discomforts, in case said market house should be erected as is now contemplated and about to be done.

That many years ago a market house was built in the said street, near to the site where the present one is now going up, but a little further from the residence of the complainant; and that said market house was taken down about 15 years ago, by the Common Council of said Borough, or by their order, principally, if not entirely, because it was considered a nuisance in the street, obstructing the great thoroughfare of the town, drawing noisy and turbulent boys and men to it, as a fit place of resort for amusement and disorder, and as unsuitable to a market place because of the dust of the street, and of the little use of such house. And the complainant shows, that the same objections then urged against the former market house are valid against the present one, with the additional fact that the town has extended, and is not as compact as it then was, thereby rendering the distance to a large portion of the inhabitants much greater than then.

That while the vote taken on the day of the annual meeting in April, aforesaid, to the effect that a market house should be built, and $1,000 be raised by tax for that object, was a vote of only 23 in favor and 22 against it, a larger number of inhabitants than the whole number of those who voted either for or against the measure, to wit, about 60 persons, including the largest tax payers in the Borough, remonstrated, in writing, with the Council, against the erecting of said market house; and a much larger number, embracing, as the complainant fully believes, a very large majority of the inhabitants of said Borough, are opposed to the erection of a market house in any part of the Bor-

ough, but especially in the place where it is now about to be erected, in the main street of the town.

That the number of inhabitants of said Borough lawfully entitled to vote for officers is about 250, and that the population of the Borough is supposed to amount to about 2,000. That a large number of inhabitants consists of widows and other property owners who do not go to the polls to vote, but who are deeply interested in the question of a market house, and whose remonstrances ought not to be disregarded. That the complainant fully believes, from what she hears from many of the inhabitants, and from other evidence within her own knowledge, that a market house is not demanded in the said Borough, but is opposed by a large majority of the citizens of said Borough; and that a large number even of those who desire a market house, perhaps a majority of them, object to the erection of it in the main street of the town.

That on the 4th May, 1850, the Common Council passed an ordinance for the assessment and collection of the money voted at the aforesaid annual meeting for the use of the Borough; in which ordinance it was made the duty of the Assessor to assess the sum of $1700, equitably upon all &c.; which the Assessor shall set down in writing, that the Common Council may ascertain that every individual is duly and justly assessed.

That the Collector of the Borough has demanded of the complainant a certain sum, for tax, the principal part of which was for the building of the market house. That the complainant, never having been called on by the Assessor for an account of her property made rateable by the said ordinance, was ignorant whether said tax against her was just or not; and upon inquiry has learned that the Assessor had very generally neglected to call upon the citizens, to assess their property, but had made his assessment without an account being rendered to him, by the said inhabitants, upon application. And the complainant, further inquiring into the mode and principle of said assessment, ascertained that the said Assessor had not pursued the directions given in said ordinance, but had omitted and neglected to assess any portion of said tax on much if not all of the chattels, effects

and estates of taxable persons within said Borough, whereby the land of the complainant and of other citizens was unfairly and unjustly taxed. That said Collector is diligent in collecting all the taxes he can collect, and refers the complainant and others who feel aggrieved to the Common Council, who sit *to hear* appeals in cases of taxation in August next.

That, unless the said Collector and the said Common Council and said Noah Green be restrained from collecting said tax and from erecting the said market house, the complainant will be aggrieved and will sustain injury, and will, in a great measure, be without adequate redress in a court of common law, as she is informed ; and that an unauthorized debt will be entailed upon the inhabitants of said Borough, caused by erecting a market house *at a greater cost than was ever directed at the last annual meeting.*

That the said main street is not, as the complainant is informed and believes, subject to such or any other encroachment, either by the said Common Council or by any other body or persons ; that the said street is not the property of said Borough,˙ and cannot be taken, altered or obstructed by any order or ordinance of said Borough for the purpose of erecting a market house or any other building thereon ; that the *jurisdiction* and power of said Council do not reach and affect the said main street in the same manner and extent as they affect and control the other streets of said Borough.

That said main street is the ancient road known in law as " The great road leading from Elizabeth Town to Trenton," and can be occupied and altered only in pursuance of the laws of this State concerning roads ; and the complainant submits, whether this highway is under the control of said Common Council, and whether said Council have any better right to erect a market house or any other house in said great road than any other body or individuals have ; and whether said road is not secured for public traveling and for no other purpose ; and whether the building of a market house in said road is not in violation of the laws of this State and prejudicial to the rights of travelers on said highway.

That the said market house, if erected where it is about to be erected, will necessarily incommode and obstruct traveling on said highway, &c.

The bill prays that the Common Council and Noah Green may desist from any further erecting the said market, and the said Collector from collecting the said Borough tax, till the legality of its assessment may be examined before the proper tribunal; and that the complainant shall have such further and other relief &c.; and prays injunction and subpœna.

An injunction was granted, by Master Ewing, pursuant to the prayer of the bill.

On the 10th July, 1850, the defendants put in their joint and several answer.

The answer admits the annual meeting stated in the bill; and that at such meeting certain resolutions were adopted upon the subject of erecting a market house; but the defendants deny that said resolutions were adopted in the manner and under the circumstances set forth in the bill; but allege that after the said meeting was organized, and at about 11 o'clock in the forenoon, a resolution was adopted in the following words, to wit: "Resolved, that a vote whether a market house be erected or not be taken at 3 o'clock this afternoon." That no opposition was made to this resolution, and that, immediately after its adoption, public proclamation was made, and notice given by the presiding officer of the meeting, that at 3 in the afternoon the people would be called upon to vote upon the question of erecting a market house; and again, at about half-past 1, after the polls had been closed and the votes counted, and when a very large number of persons were present to hear the result of the election, public notice was again given by the presiding officer that at 3 o'clock the question of the market house would come up for decision. That when the hour of 3 arrived, and after a statement had been made, by the late Mayor, of the finances of the Borough, the following resolutions were adopted: "Resolved, that $300 be

raised by tax to pay the existing debts : Resolved, that a market house be erected in the Borough : Resolved, that $1,000 be raised by tax to build said market house : Resolved, that the Mayor call the citizens within one week to select a proper site for the building : Resolved, that $150 be raised by tax for the purpose of cisterns in the Borough : Resolved, that $50 be raised by tax for the use of the Fire Department."

That these, as appears by the minutes of said meeting, are the only resolutions that were adopted ; no such resolution as that stated in the bill, to the effect that the market house should not be located in the main street between the City Hotel and Washington street was, so far as these defendants know or believe, adopted.

That, in pursuance of one of the said resolutions, a meeting of the citizens was called for the purpose of selecting a site for the market house, to be held on the 8th of April; printed notices of which were set up &c., and a copy inserted in the Princeton Whig, signed by A. L. Martin, Clerk *pro tem.*, by the express order and direction of the Mayor.

That the Common Council, at a meeting held on the 3d of April, two days after the annual meeting, passed the following resolutions : " Resolved, that the inhabitants be called together to determine where the market house shall be located, on Monday next, the 8th inst., at 3 o'clock P. M., at the house of J. V. D. Joline : Resolved, that the notice be by printed hand-bills." That thus the sanction of the Common Council was given to this meeting of the inhabitants for the purpose of selecting a site for the proposed market house.

The answer then states the meeting on the 8th, and the result of it ; and that a large majority voted for the site on which &c.

The answer denies that the Common Council or a majority of them are, or ever have been, of the opinion that the market house ought not to be located on the site selected at said meeting.

It states, that, although it be true, as stated in the bill, that the Common Council have not ordained in due and solemn form that the interests of the inhabitants of the Borough require a market house, or passed any ordinance or law authorizing the

erection of a market house, yet they have done all that was deemed necessary or proper for them to do in the premises. That at a meeting of said Council, held as early as April 9, 1850, a special committee was appointed upon the subject of a market house, and that, on the 3d June, thereafter, the committee made a report recommending that the building be located in front of the City Hotel, &c., (the place designated,) which report was adopted by the Common Council on that day ; and on the same day it was resolved, that the market house be constructed on the plan &c. of the market house in Trenton, (dimensions given ;) and, by another resolution, the Mayor was authorized to invite proposals for constructing the building.   That, at a meeting of the Common Council, held June 10th, several proposals were presented ; and that of Noah Green, being the lowest, was accepted ; and the committee on the market house were instructed to contract with him.   That a contract in writing was executed, and reported to a subsequent meeting of the Common Council, and approved by them ; and the said Noah Green had furnished all the materials necessary for the completion of the building, and was preparing the roof for being tinned when he was restrained by the injunction.

The answer denies that the complainant's property will be depreciated, and says that the defendants are satisfied that it will be rendered intrinsically more valuable, although as a private residence it may be made less private and therefore less agreeable.   It states what the old market was ; and that it had a town house and Borough prison connected with it.   It contains statements as to said highway ; and denies that the market house will be any obstruction to it.

A motion was made to dissolve the injunction.

*John P. Stockton* and *R. S. Field* in support of the motion. They cited *Story's Eq. Jur.*, sec. 925 ; *Saxton's Ch.* 476, 695 ; 16 *Ves.* 342 ; *Ambler*, 158 ; 1 *Green's Ch.* 64 ; 2 *Ib.* 355, 136, 426 ; 18 *Ves.* 211 ; 3 *Atk.* 751 ; 1 *Halst. Ch. Rep.* 14, 81 ; 1 *Barbour's Ch. Prac.* 642 ; 2 *John. Ch.* 148, 204 ; 1 *Bland,*

355; 3 *Green's Ch.* 446; *Angell & Ames on Corporations,* 604; 1 *Paige,* 311; 2 *Green's Ch.* 482.

*Hageman* and *James S. Green* contra. They cited 2 *Bl. Com.* 175; 2 *Watts,* 23; 4 *Peters,* 168; *Saxt. Ch.* 540; 2 *John. Rep.* 357; 15 *Ib.* 447; 6 *Peters,* 431, 499, 538; 1 *Halst. Rep.* 352; 4 *Paige,* 510; 12 *Peters,* 91; 19 *Ves.* 622; 6 *John. Ch.,* *Nuisance;* *Angell on Tide Waters,* 121; 2 *John. Ch. Rep.* 162; 5 *Ib.* 101; 9 *Paige,* 323; *Saxt. Ch.* 157, 694; 1 *Green's Ch.* 183; 13 *Peters,* 587; 11 *Peters,* 420, 557; 2 *Peters,* 558.

THE CHANCELLOR. Whether there is any power under the charter to ordain and provide the means for the erection of a market-house, and whether, if there be such power, it has been legally exercised; and whether a market-house can be lawfully erected on any part of the main road running through Princeton, are questions of law which this Court will not entertain, unless there be something further, in the case presented, which is within the proper jurisdiction of the Court, and which calls for its equitable interposition. If this Court should entertain an opinion against the defendants on all the questions above stated, there would be no ground for its interposition by injunction, unless the case could be brought within the class of cases in which the Court interferes for the prevention of nuisances. The injunction cannot be retained unless a market-house in the place selected can be declared a nuisance. I am not prepared to say it would be a nuisance.

But if a nuisance, it would be a public nuisance; and this is not the Court for the correction of public abuses. And I do not consider the fact that a dwelling-house in the neighborhood might be less eligible as a dwelling-house to be that kind of private injury to grow out of a public nuisance which would authorize the interposition of this Court. And I see no such irreparable injury to result to the complainant as should induce its interposition by injunction. The question involved should therefore be left to the action of the law courts.

As to the obstruction of the public road, if the market-house

would be such obstruction, and it be made without authority, it would be a public abuse, for the correction of which this is not the proper tribunal.

Without deciding, therefore, the several questions argued, as to the powers given by the charter, &c., I shall dissolve the injunction on the ground that I do not think it a case for an injunction.

Injunction dissolved.